O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EDDIE CORRALES,

                 Plaintiff,

       vs.

M. VEGA, ET AL.,

                Defendants.

CASE NO. ED CV 12-01876 JVS (RZ)

ORDER ACCEPTING FIRST
INTERIM REPORT AND
RECOMMENDATION OF UNITED
STATES MAGISTRATE JUDGE

     The Court has reviewed the file in this matter, and has read and reviewed the First Interim Report and Recommendation of United States Magistrate Judge, including the separately-filed Supplement to that Report. Further, the Court has engaged in a *de novo* review of those portions of the Report and the Supplement to which Plaintiff has thoughtfully objected with skill seldom displayed by *pro se* litigants. The Court needs no further discussion to accept the Report's recommendation to dismiss the complaint (1) without leave to amend as to Claim 2 (Due Process), and (2) with leave to amend as to Claim 3 (Cruel And Unusual Punishment). But the fate of Claim 1, for which the Magistrate Judge has recommended dismissal without leave to amend, merits the following additional consideration.

///

///

# I.

## INTRODUCTION

In Claim 1, Plaintiff alleges that prison guards framed him, resulting in his "validation," i.e., a finding that he is an active criminal gang associate. As a result, he was placed, and has repeatedly been retained, in the Security Housing Unit (SHU). All the while, he forgoes the good-time sentencing credit that he otherwise would earn. CAL. CODE REGS. tit. 15, § 3043.4(b). The guards did this, Plaintiff alleges, in retaliation for his pursuit of First Amendment-protected grievance activities. The critical question raised by the Magistrate Judge in the Report and Supplement is whether the "favorable termination rule" of *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), and *Heck*'s progeny bars such a claim so long as the underlying validation has not yet been set aside. To decide this question, the Court must examine (1) the elements of a successful retaliation claim, (2) the nature and scope of the *Heck* favorable termination rule and, as persuasive but not binding authority, (3) the outcomes in the few legally and factually similar cases in this and other District Courts in California.

# II.

## PRISONERS' RETALIATION CLAIMS, AND *BRUCE V. YLST*

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. *See Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). In the prison context, a viable claim of First Amendment retaliation entails five basic elements:

(1)    a state actor took some adverse action against an inmate

(2)    because of

(3)    that prisoner's protected conduct;

(4)    such action chilled the inmate's exercise of his First Amendment rights (although a complete silencing of the prisoner is not required); and

(5)    the defendants took their adverse action without legitimate penological goals.

*See Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (stating, as element 5, the *result*-oriented test whereby plaintiff must show "the action did not reasonably advance a legitimate correctional goal"); *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003) (stating, as element 5, the *intent*-oriented test whereby "the prisoner plaintiff 'bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains'"), *quoting Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). An allegation of retaliation against a prisoner for filing a prison grievance is sufficient to support a claim under section 1983. *Bruce*, 351 F.3d at 1288.

Plaintiff relies heavily on the *Bruce* case, and with good reason. Factually, it is quite similar to his own case. Like Plaintiff, Vincent Bruce was "validated" as a prison gang associate. As with Plaintiff, the validation occurred after Bruce engaged in protected First-Amendment conduct, although in Bruce's case it was permissible "jailhouse lawyering" rather than filing grievances. Like Plaintiff, Bruce claimed that his validation was undertaken as retaliation for his protected conduct. Although the *Bruce* court affirmed the district court's dismissal of Bruce's *due-process* claim challenging the same validation, noting that at least "some evidence" supported the gang finding, the appellate court reversed and remanded as to the *retaliation* claim. Because *Bruce* allowed a prisoner's retaliation claim even as it disallowed a due-process claim, Plaintiff strongly suggests, this Court likewise must permit Plaintiff to proceed on at least his retaliation claim.

Legally, however, *Bruce* is of limited use for one simple reason. It neither addresses the favorable termination rule nor even mentions the fact that Vincent Bruce lost good-time credits due to his gang validation. Here, in contrast, the favorable termination rule already has been extensively discussed as a potential impediment to Claim 1. *Bruce* cannot serve as binding precedent for the non-applicability of a rule that it never even addressed. The Court next turns to that very rule.

///

///

- 3 -

### III.

### THE FAVORABLE TERMINATION RULE

In *Heck*, the Supreme Court announced the favorable termination rule as follows:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid*, FN6 a § 1983 plaintiff must prove that the conviction or sentence has been [overturned].

512 U.S. at 486-487 (emphasis added).  Footnote 6 made clear that "invalidity" carries a broad meaning:

> An example of this . . . — a § 1983 action that does not seek damages directly attributable to conviction or confinement but whose successful prosecution would necessarily imply that the plaintiff's criminal conviction was wrongful — would be the following:  A state defendant is convicted of and sentenced for the crime of resisting arrest . . . .  He then brings a § 1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures.  In order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted.  [Therefore,] the § 1983 action will not lie.

*Id.* at 486 n.6.

The high court extended the rule to  prison disciplinary findings in *Edwards v. Balisok*, 520 U.S. 641, 117 S. Ct. 1584, 137 L. Ed. 2d 906 (1997).  The plaintiff in that case, Jerry Balisok, lost 30 days of good-time credit due to four prison disciplinary findings.  He brought a § 1983 action in federal court, claiming that the disciplinary

proceedings violated his right to due process. "Taking account of . . . *Preiser v. Rodriguez*, 411 U.S. 475, 500, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973), which held that the sole remedy in federal court for a prisoner seeking restoration of good-time credits is a writ of habeas corpus, Balisok's amended complaint did not request restoration of the lost credits. (As the District Court noted, however, he expressly reserved the right to seek that relief in an appropriate forum.)" *Balisok*, 520 U.S. at 643. *Balisok* left unclear whether the favorable termination rule was limited to claims that, if upheld, would result in the restoration of good-time credits or otherwise result in shortened stay in prison – although *Balisok*'s reference to *Preiser* arguably suggested such a limitation.

In *Wilkinson v. Dotson*, 544 U.S. 74, 80-82, 125 S. Ct. 1242, 161 L. Ed. 2d 253 (2005), the Supreme Court clarified that, indeed, the rule bars only claims that, if successful, would shorten the inmate's time in prison. In other words, so long as the length of a prison term would *not necessarily* be affected by the outcome of this federal case, a prisoner could proceed pursuant to § 1983. But as Magistrate Judge Gregory G. Hollows noted in the opinion excerpted in the Supplement, "if the disciplinary conviction, resulting in credit loss to a determinate sentence or a much lesser chance of parole suitability for an indeterminate sentence was found invalid, per se, such a result *would* necessarily affect the length of the prison term." *Avery v. Heintschel*, No. CV 06-0041 LKK (GGH), 2008 WL 314564 (E.D. Cal. 2008), at *5 (emphasis added).

## IV.

## DISCUSSION

Plaintiff, in objecting to the Supplement, presents two noteworthy arguments against applying the favorable termination rule to Claim 1. (If one includes his reliance on the factually similar *Bruce*, then he presents three such arguments. As noted above, however, the Court cannot construe *Bruce* as binding precedent for the inapplicability of a rule that it never even mentioned.) First, he asserts that upholding his retaliation claim would not necessarily imply the invalidity of the underlying gang-status validation. He

explains that he is not challenging *all three* of the three items of gang evidence that state regulations require to support a validation. *See* CAL. CODE REGS. tit. 15, § 3378(c)(3) (validation "requires at least three (3) independent source items of documentation indicative of actual membership," one of which must establish a "direct link" to a known gang member). Thus, he says, at least one item of gang evidence – and therefore "some evidence" – would remain untainted, even if he wins his claim. Plaintiff then points to habeas cases rejecting evidence-based challenges to prison disciplinary findings whenever "some evidence," even if relatively weak, supports the result. Objs. To Supp. Report at 9 (¶¶ 23-24), 10 (¶ 26). Because Plaintiff's success in the present case still would leave at least "some evidence" to support the finding, he reasons, that success would not necessarily imply the finding's invalidity.

This first argument is unavailing for several independent reasons. The first is that it is simply untrue that Plaintiff is not attacking all three "source items" used against him. He expressly challenges, as improperly included for retaliatory reasons, the inclusion of all three. The first is a tattoo, which he explains is a symbol representing the number 13 in Mayan culture. Plaintiff alleges that he had the tattoo before the underlying incidents, and that the prison-guard defendants first "noticed" it as a sign of gang membership only after he began filing the underlying grievances. *See* Comp. ¶¶ 17, 23-26. The second source item, he alleges, and apparently one that supplied the one necessary "direct link" to known gang members, *see* CAL. CODE REGS. tit. 15, § 3378(c)(3), is a list of names found in his cell. But Plaintiff expressly alleges that the use of this list against him violates a 2004 legal settlement. Comp. ¶¶ 27-30. The third source item is a bandana, again displaying a Mayan symbol for 13, which he had stored in his personal property in 2008 and had gone unremarked-upon in several guards' searches. Once he began filing the underlying grievances, however, the bandana was "found" and cited as evidence of his gang membership. In sum, if Plaintiff proves his allegations, then not even "some evidence" will remain untainted.

The second reason why this "some evidence" argument is unpersuasive is that the "some evidence" standard would not apply here in the way Plaintiff assumes. The California regulations are quite specific in requiring three "source items" and in requiring that one item supply a "direct link" to a known gang member. *See* CAL. CODE REGS. tit. 15, § 3378(c)(3). In other words, gang-status validation is a special, stricter procedure requiring more than a general preponderance of the evidence, as might be the case at a hearing to determine whether a prisoner started a fight or disobeyed a lawful order. Stated another way, there would at least need to be "some evidence" of each of the three predicate findings. If Plaintiff could show that even one of the "source items" was used against him improperly, for retaliatory reasons, then it appears to this Court that he could be entitled to relief from the validation.

Third, and most importantly, even if "some evidence" somehow remained in the wake of a victory by Plaintiff, such could not prevent the necessary implication that the gang-membership finding was invalid. *Balisok* illustrates this point. Jerry Balisok argued that a judgment in his favor would not necessarily imply the invalidity of his loss of good-time credits because the state court followed a "some or any evidence" standard and, thus, the prison hearing's results could survive. The Supreme Court held that this possibility was irrelevant, because Balisok's "basis for attacking the judgment is not insufficiency of the evidence." 520 U.S. at 648. Here, similarly, winning the retaliation claim means proving that the action was taken without any legitimate penological goal and thus would not have occurred but for retaliatory motives. An action thus found by a court to have been taken for retaliatory reasons is surely "invalid" in any reasonable interpretation of the term.

Plaintiff's second noteworthy argument against the applicability of the favorable termination rule is that he does not seek reinstatement of good-time credits, at least not here and now. But like Jerry Balisok, who expressly reserved the right to file a subsequent action seeking credit, Plaintiff would become entitled to those credits if this Court were to uphold his retaliation claim and, as noted above, this entitlement necessarily implies the invalidity of the gang-status validation.

This Court's decision is consistent with the handful of unpublished decisions in this District and other California district courts addressing whether the favorable termination rule bars inmates' retaliation claims targeting disciplinary findings that resulted in losses of good-time credits.  All but one agree that the rule bars such claims.  *See Brown v. Kavanaugh*, No. CV 08-1764 LJO (BAM), 2012 WL 4364120 (E.D. Cal. Sept. 21, 2012), at *9 (although "Plaintiff argues that he is not seeking restoration of the time credits forfeited due to being found guilty of the rule violations," upholding his claim of being falsely charged "would necessarily imply the invalidity of" the finding and, hence, the loss of credits) (permitting other retaliation claims to proceed because those upholding those claims would not imply the invalidity of any loss of good-time credits); *Harbridge v. Schwarzenegger*, No. CV 07-4486 GW (SH), 2010 WL 2889522 (C.D. Cal. 2010), at *1 n.2 (noting prior dismissal of retaliation claim,[1] among others, because granting relief "would 'necessarily imply the invalidity' of a deprivation of good-time credits); *Martin v. Sullivan*, No. CV 06-0972 OWW (DLB), 2007 WL 2904285 (E.D. Cal. 2007), at *8 (rejecting inmate's claim that he was framed for retaliatory reasons, where Plaintiff lost good-time credits due to the targeted disciplinary finding and had not yet shown that the credits had been restored); *see also Glass v. Fields*, No. CV 09-0098 AWI (BAM), 2012 WL 1898899 (E.D. Cal. May 23, 2012), at *12 (dicta) (permitting retaliation claim to proceed because inmate was "[a]ssessed ZERO days forfeiture" of sentencing credit, but appearing to accept that the favorable termination rule would have barred that claim if the inmate had lost good-time credit as a result of the targeted finding); *but see Pezant v. Stainer*, No. CV 11-1819 LJO (JLT), 2012 WL 2886698 (E.D. Cal. 2012) , at *5 (habeas action) (permitting habeas jurisdiction for *due process* challenge to gang validation, but rejecting habeas jurisdiction – and thus indicating propriety of civil-rights action –  for

---

[1] Although this 2010 order refers generally to a "First Amendment" claim, that claim indeed was based on retaliation.  This is spelled out on pages 7-8 of the Amended Report And Recommendation – not available on Westlaw –  filed in *Harbridge* on July 3, 2008 and accepted on August 19, 2008.  *See* docket in *Harbridge*, *supra*.

*retaliation* challenge to same validation as having "no bearing on the length of Petitioner's sentence"). Although these cases are not binding, they illustrate a general agreement favoring the applicability of the favorable termination rule to bar claims like Claim 1.

## V.

## CONCLUSION

Plaintiff's success on his retaliation claim will mean he has proven that the decision to pursue him for gang-status validation was made without any legitimate penological goal – that is, that the decision was based principally upon retaliatory animus and would not have occurred but for that animus. Such a decision is perforce "invalid" in any reasonable sense of the term. In turn, Plaintiff would become entitled to recoup good-time credits from the time of his gang-status validation and placement in SHU. Although Plaintiff pointedly disclaims seeking restoration of good-time credits *in this action*, similar to the inmate in *Balisok*, that does not change the fact that he would be entitled to them in another proceeding. The majority of courts that have decided similar challenges have agreed that the favorable termination rule bars retaliation claims like Plaintiff's.

With the foregoing observations, the undersigned accepts the findings and recommendations in the First Interim Report and its Supplement.

Accordingly, it is ORDERED that the initial complaint is dismissed (a) with leave to amend as to Claim 3, asserting conditions of confinement that violate the Eighth Amendment, and (b) without leave to amend as to Claims 1 and 2, asserting, respectively, retaliation in violation of the First Amendment and violations of due process under the Fourteenth Amendment.

When Judgment is entered, the Judgment shall reflect this ruling of the Court.

DATED: January 28, 2013

_____
JAMES V. SELNA
UNITED STATES DISTRICT JUDGE